**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARRIEL LAYNE, Individually and for Others Similarly Situated | **Case No. 1:25-cv-13716** |
| v. | Jury Trial Demanded |
| HELIA HEALTHCARE SERVICES, LLC | FLSA Collective Action<br>Rule 23 Class Action |

# FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Arriel Layne (Layne) brings this class and collective action to recover unpaid wages and other damages from Helia Healthcare Services, LLC (Helia) for violations of the Fair Labor Standards Act (FLSA), Illinois Minimum Wage Law (IMWL), and Illinois Wage Payment and Collection Act (IWPCA).

2. Helia employed Layne as one of its Hourly Employees (defined below) in Illinois.

3. Helia pays Layne and its other Hourly Employees by the hour.

4. Layne and the other Hourly Employees regularly work more than 40 hours a week.

5. But Helia does not pay them for all their hours worked.

6. Instead, Helia deducts 30 minutes a day from Layne's and its other Hourly Employees' recorded hours for so-called "meal breaks," regardless of whether they actually receive a *bona fide* meal break (Helia's "auto-deduct policy").

7. Thus, Helia does not pay Layne and the other Hourly Employees for that time.

8. But Layne and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9. Instead, Helia requires Layne and its other Hourly Employees to remain on duty and perform compensable work throughout their shifts, and Helia regularly subjects them to work interruptions during unpaid "meal breaks."

10. Additionally, Helia pays Layne and the other Hourly Employees non-discretionary bonuses that it fails to include in their regular rates of pay for overtime purposes (Helia's "bonus pay scheme").

11. Helia's auto-deduct policy and bonus pay scheme violate the FLSA and IMWL by depriving Layne and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for overtime hours worked.

12. Helia's auto-deduct policy violates the IWPCA by depriving Layne and the other Hourly Employees of earned wages, at their agreed hourly rates, for all hours worked.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15. This Court has general personal jurisdiction over Helia because it is an Illinois limited liability company.

16. Venue is proper because Helia maintains its principal place of business in Oak Park, Cook County, Illinois, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

17. Helia employed Layne as a certified nursing assistant (CNA) from approximately January 2022 until August 2022, and as a licensed practical nurse (LPN) from approximately August 2022 until January 2024 in Illinois.

18. Throughout her employment, Helia employed Layne under its auto-deduct policy and bonus pay scheme.

19. Layne's written consent was filed on January 8, 2026. *See* ECF No. 17.

20. Layne brings this class and collective action on behalf of herself and similarly situated Helia employees.

21. The putative FLSA collective is defined as:

> **All hourly Helia employees who worked during the last three years through final resolution of this action (the "FLSA Collective Members").**

22. The putative IMWL class is defined as:

> **All hourly Helia employees who worked in Illinois during the last three years through final resolution of this action (the "IMWL Class Members").**

23. The putative IWPCA class is defined as:

> **All hourly employees in Illinois who Helia imposed its auto-deduct policy on during the last 10 years through final resolution of this action (the "IWPCA Class Members").**

24. The FLSA Collective Members, IMWL Class Members, and IWPCA Class Members are collectively referred to as the "Hourly Employees."

25. Stephen Miller serves as Helia's manager.

26. Helia is an Illinois limited liability company headquartered in Oak Park, Illinois.

27. Helia may be served with process through its registered agent: **Bridgemark Healthcare, LLC, 1010 Lake St., Ste. 428, Oak Park, Illinois 60301**.

## FLSA COVERAGE

28. At all relevant times, Helia was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

29. At all relevant times, Helia was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

30. At all relevant times, Helia was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

31. At all relevant times, Helia had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

32. At all relevant times, Layne and the other Hourly Employees were Helia's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

33. At all relevant times, Layne and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

34. "Helia Healthcare operates 13 skilled nursing facilities and four premier rehabilitation centers in Illinois and Missouri" and employs more than 1,000 employees.[1]

35. To provide its patient care services Helia hires workers like Layne and the other Hourly Employees, to work in its healthcare facilities.

36. Helia posts job openings and solicits applications for these positions across all of its 18 facilities through its website.[2]

---

[1] https://www.heliahealthcare.com/about/ (last visited June 11, 2026).
[2] https://recruiting.paylocity.com/recruiting/jobs/All/a267d910-0c23-4273-bbc9-e84387b4f1c6/HELIA-HEALTHCARE (last visited June 11, 2026).

37. Helia classifies Layne and its other Hourly Employees as non-exempt and pays them by the hour.

38. While exact job titles and duties may differ, Layne and the other Hourly Employees are subject to Helia's same or similar illegal policies—its auto-deduct policy and bonus pay scheme—for similar work.

39. For example, Layne worked for Helia as a CNA and LPN in its Effingham, Illinois facilities from approximately January 2022 until January 2024.

40. Layne's job duties included assessing and monitoring patients, checking vital signs, performing wound treatments, charting treatments, and generally assisting other medical staff in accordance with Helia's policies and procedures.

41. Helia agreed to pay Layne $36.00 an hour for her first 40 hours worked plus time and a half premium overtime wages for her hours worked in excess of 40 in a workweek.

42. Throughout her employment, Helia required Layne to report her hours worked to Helia.

43. Helia's records reflect Layne's "on the clock" hours each workweek.

44. Throughout her employment, Layne typically worked approximately 12 hours a day and 4 to 5 days a week (48 to 60 hours a workweek).

45. But throughout her employment, Helia did not pay Layne for all her hours worked.

46. Instead, Helia subjected Layne to its auto-deduct policy.

47. Specifically, Helia automatically deducted 30 minutes a day from Layne's recorded hours for so-called "meal breaks."

48. Thus, Helia did not pay Layne for that time.

49. But throughout her employment, Layne did not actually receive *bona fide* meal breaks.

50. Instead, Helia regularly required Layne to perform compensable work throughout her shifts, including during her so-called "meal breaks."

51. As a result of its auto-deduct policy, Helia failed to pay Layne earned wages (at her agreed hourly rate) for all hours worked.

52. Likewise, as a result of its auto-deduct policy, Helia failed to pay Layne premium overtime wages for all overtime hours during workweeks in which she worked more than 40 hours.

53. Layne and the other Hourly Employees perform their jobs under Helia's supervision and use materials, equipment, and technology Helia approves and supplies.

54. Helia requires Layne and its other Hourly Employees across its facilities to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

55. At the end of each pay period, Layne and the other Hourly Employees receive wages from Helia that are determined by common systems and methods that Helia selects and controls.

56. Helia requires Layne and its other Hourly Employees to record their hours worked using Helia's designated timekeeping system.

57. Thus, just as Helia's records reflect the number of hours Layne worked "on the clock" each workweek, Helia also maintains records of the number of hours the Hourly Employees worked "on the clock" each workweek.

58. The other hourly employees typically work approximately 48 to 60 hours a workweek.

59. But, like Layne, Helia fails to pay them for all their hours worked.

60. Indeed, Helia subjects its other Hourly Employees to the same or similar auto-deduct policy it imposed on Layne.

61. Specifically, Helia automatically deducts 30 minutes a day from its other Hourly Employees' for so called "meal breaks."

62. Helia automatically deducts this time regardless of whether they actually receive full, uninterrupted, 30-minute meal breaks.

63. Helia simply assumes Layne and its other Hourly Employees receive *bona fide* meal breaks each shift they work.

64. But, like Layne, the other Hourly Employees do not actually receive *bona fide* meal breaks.

65. Instead, like Layne, Helia requires other Hourly Employees remain on duty and performing compensable work throughout their shifts, including during unpaid "meal breaks."

66. And, like Layne, Helia subjects its other Hourly Employees to work interruptions during unpaid "meal breaks."

67. These work interruptions prevent the Hourly Employees from engaging in personal activities during unpaid "meal breaks."

68. In other words, Layne and the other Hourly Employees are not relieved of all work duties during their unpaid "meal breaks."

69. Rather, during their unpaid "meal breaks," Layne and the other Hourly Employees are forced to remain on duty and perform their regular job duties.

70. Thus, Layne and the other Hourly Employees routinely spend their unpaid "meal breaks" performing work for Helia's—not their own—predominant benefit.

71. This unpaid time is compensable under the FLSA, IMWL, and IWPCA because Helia knew, or should have known: (1) Layne and its other Hourly Employees were performing unpaid work during their "meal breaks"; (2) they were interrupted with work duties during attempted "meal breaks"; (3) they were not completely relieved of all work duties during their unpaid "meal breaks"; (4) they entirely skipped their "meal breaks" due to work demands; (5) their unpaid "meal breaks" were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during

their unpaid "meal breaks" because of work interruptions; and/or (7) they spent their unpaid "meal breaks" performing their regular job duties for Helia's predominant benefit.

72. This unpaid time is also compensable under the IWPCA because Helia agreed to pay Layne ($36.00 an hour to her) and its other Hourly Employees set hourly rates of pay for all hours worked, and Helia failed to pay them these earned wages for the work they performed during on duty "meal breaks."

73. Helia fails to exercise its duty as Layne's and the other Hourly Employees' employer to ensure these employees are not performing work that Helia does not want performed during their unpaid "meal breaks."

74. And Helia knows, should know, or recklessly disregards whether Layne and its other Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks."

75. Thus, Helia requested, suffered, or permitted Layne and its other Hourly Employees to work during their unpaid "meal breaks."

76. Despite accepting the benefits, Helia does not pay Layne and its other Hourly Employees for the compensable work they perform during their automatically deducted "meal breaks."

77. Additionally, Helia does not pay Layne and the other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

78. Instead, Helia pays Layne and the other Hourly Employees under its bonus pay scheme.

79. Specifically, Helia agrees to pay and subsequently pays Layne and the other Hourly Employees non-discretionary bonuses, including shift bonuses and attendance bonuses, based on criteria Helia sets.

80. But Helia excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes when Layne and the other Hourly Employees work in excess of 40 hours in a workweek.

81. Thus, under its bonus pay scheme, Helia does not pay Layne and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

82. Layne brings her claims as a class and collective action under FED. R. CIV. P. 23 and Section 216(b) of the FLSA on behalf of herself and the other Hourly Employees.

83. Like Layne, the other Hourly Employees are victimized by Helia's auto-deduct policy and/or bonus pay scheme.

84. Other Hourly Employees worked with Layne and indicated they were paid in the same or similar manner, performed similar work, and were subject to Helia's auto-deduct policy and/or bonus pay scheme.

85. Based on her experience, Layne is aware Helia's auto-deduct policy and bonus pay scheme were imposed on other Hourly Employees.

86. The Hourly Employees are similarly situated in the most relevant respects.

87. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages for all hours worked and overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked over 40 in a workweek.

88. The only relevant inquiry is whether the Hourly Employees were subjected to Helia's auto-deduct policy and/or bonus pay scheme.

89. Therefore, the specific job titles or job locations of the various Hourly Employees do not prevent class or collective treatment.

90. Rather, Helia's auto-deduct policy and bonus pay scheme render the Hourly Employees similarly situated for the purpose of determining their right to earned wages and overtime wages.

91. Helia's records reflect the number of hours the Hourly Employees recorded working each week, "on the clock."

92. Helia's records further reflect it deducted 30 minutes a day from the Hourly Employees for so-called "meal breaks."

93. And Helia's records show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for overtime purposes.

94. The back wages owed to Layne and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

95. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Helia's records, and there is no detraction from the common nucleus of liability facts.

96. Therefore, the issue of damages does not preclude class or collective treatment.

97. Layne's experiences are typical of the experiences of the other Hourly Employees.

98. Layne has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

99. Layne has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Illinois law.

100. Layne and her counsel will fairly and adequately protect the interests of the other Hourly Employees.

101. Layne retained counsel with significant experience in litigating complex class and collective actions.

102. A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

103. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Helia will reap the unjust benefits of violating the FLSA, IMWL, and IWPCA.

104. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

105. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Helia.

106. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

107. Accordingly, a class and collective action is an appropriate method for the fair and efficient adjudication of this lawsuit.

108. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

109. Among the common questions of law and fact are:

(a) Whether Helia engaged in a policy and practice of deducting 30 minutes a day from the Hourly Employees' hours for "meal breaks";

(b) Whether Helia required, requested, suffered, or permitted the Hourly Employees to work during their unpaid "meal breaks";

(c) Whether Helia paid the Hourly Employees non-discretionary bonuses;

(d) Whether Helia excluded non-discretionary bonuses from the Hourly

Employees' regular rates of pay;

(e) Whether Helia failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

(f) Whether Helia failed to pay the Hourly Employees all their earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA.

(g) Whether Helia's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

(h) Whether Helia's violations were willful.

110. As part of its regular business practices, Helia intentionally, willfully, and repeatedly violated the FLSA, IMWL, and IWPCA with respect to the Hourly Employees.

111. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

112. The Hourly Employees are known to Helia, are readily identifiable, and can be located through Helia's business and personnel records.

## HELIA'S VIOLATIONS WERE WILLFUL

113. Helia knew it employed Layne and the other Hourly Employees.

114. Helia knew it was subject to the FLSA's overtime provisions.

115. Helia knew the FLSA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

116. Helia knew each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Helia's timekeeping system.

117. Helia knew Layne and the other Hourly Employees were non-exempt employees entitled to overtime pay.

118. Helia knew it paid Layne and the other Hourly Employees non-discretionary bonuses.

119. Helia knew it was required to include these non-discretionary bonuses in their regular rates of pay.

120. Helia knew these non-discretionary bonuses were not included in Layne's and the other Hourly Employees' regular rates of pay for overtime purposes.

121. And Helia knew the FLSA requires it to pay Layne and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

122. Helia's failure to pay Layne and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

123. Indeed, in 2019, Helia paid $42,696 in back wages resulting from "violations of the overtime and recordkeeping requirements of the Fair Labor Standards Act" uncovered as part of a DOL investigation at one of its facilities.[3]

---

[3] https://www.dol.gov/newsroom/releases/whd/whd20191023 (last visited October 27, 2025).

124. Helia knowingly, willfully, and/or in reckless disregard of the FLSA carried out its auto-deduction policy and bonus pay scheme that deprived the Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

125. Layne brings her FLSA claim as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

126. Helia violated, and is violating, the FLSA by employing non-exempt employees, such as the FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

127. Helia's unlawful conduct harmed the FLSA Collective Members by depriving them of overtime wages they are owed.

128. Accordingly, Helia owes the FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

129. Because Helia knew or showed reckless disregard for whether its auto-deduction policy bonus pay scheme violated the FLSA, Helia owes the FLSA Collective Members these wages for at least the past 3 years.

130. Helia is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

131. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
## (IMWL CLASS)

132. Layne brings her IMWL claim on behalf of herself and the IMWL Class Members pursuant to FED. R. CIV. P. 23.

133. The conduct alleged violates the IMWL (820 ILCS 105/1, *et seq.*).

134. At all relevant times, Helia was an "employer" within the meaning of the IMWL.

135. At all relevant times, Helia employed the IMWL Class Members as covered "employees" within the meaning of the IMWL.

136. The IMWL requires employers, like Helia, to pay employees, including the IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

137. The IMWL Class Members are entitled to overtime pay under the IMWL.

138. Helia violated, and is violating, the IMWL by failing to pay the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. *See* 820 ILCS 105/4a.

139. Helia's unlawful conduct harmed the IMWL Class Members by depriving them of the overtime wages they are owed.

140. Accordingly, the IMWL Class Members are entitled to recover their unpaid overtime compensation owed from the 3 years prior to the filing of this Complaint, treble damages, as well as monthly statutory damages, plus interest, attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## COUNT III
## FAILURE TO PAY ALL EARNED WAGES UNDER THE IWPCA PURSUANT TO 820 ILCS 115/1, *ET SEQ.*
## (IWPCA CLASS)

141. Layne brings her IWPCA claim on behalf of herself and the other IWPCA Class Members.

142. Helia's conduct violates the IWPCA (820 ILCS 115/1, *et seq.*).

143. At all relevant times, Helia was subject to the IWPCA because Helia was (and is) an "employer" within the meaning of the IWPCA.

144. At all relevant times, Helia employed the IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

145. The IWPCA requires employers, like Helia, to pay employees, including the IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

146. During the course of their employment, Helia agreed to pay each IWPCA Class Member an hourly rate for all the hours of work they performed.

147. Each IWPCA Class Member accepted Helia's offer.

148. But during the course of their employment, Helia failed to pay the IWPCA Class Members for all the time they worked at the hourly rates Helia agreed to pay them because Helia failed to include the time that they worked during their automatically deducted "meal breaks" in their total number of hours worked.

149. Thus, Helia violated, and is violating, the IWPCA by failing to pay the IWPCA Class Members all their earned wages (at the hourly rates Helia agreed to pay them) for all the hours of work they performed for Helia's benefit.

150. Helia's unlawful conduct harmed the IWPCA Class Members by depriving them of earned wages they are owed.

151. Accordingly, the IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages, plus interest, attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

152. Layne demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Layne, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order certifying the putative classes action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Layne and her counsel to represent the interests of the Hourly Employees;

d. An Order finding Helia liable to the Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Helia liable to IMWL Class Members for unpaid overtime wages owed under the IMWL, treble damages, as well as monthly statutory damages;

f. An Order finding Helia liable to the IWPCA Class Members for unpaid earned wages owed under the IWPCA, as well as monthly statutory damages;

g. A Judgment against Helia awarding Layne and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, monthly statutory damages, and any other penalties, at the highest available rates, under the FLSA, IMWL, and IWPCA;

h. An Order awarding attorneys' fees, costs, and expenses;

i. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: June 18, 2026

Respectfully submitted,

**WERMAN SALAS PC**

By: */s/ Douglas M. Werman*
Douglas M. Werman
Maureen A. Salas
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com
*Local Counsel for Plaintiff*

Michael A. Josephson
TX Bar No. 24014780
Andrew W. Dunlap
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR LAYNE & THE HOURLY EMPLOYEES**